UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:21-CR-00528-HEA |
| BRITTISH WILLIAMS, Defendant. | ) ) ) ) ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Brittish Williams, represented by defense counsel Beau Brindley, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1 through 15 of the Indictment, the Government agrees to dismiss Counts 16 through 18. The Government further agrees that no further federal prosecution will be brought in this District relative to the defendant's bank fraud, insurance fraud,

1

CARES Act fraud, and tax fraud schemes from June of 2019 through 2022 of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea.  The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a).  The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Counts 6 through 9, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to all items identified in the forfeiture allegation of the Indictment.

**3.  ELEMENTS:**

As to Counts 1 through 5, the defendant admits to knowingly violating Title 42, United States Code, Section 408(a)(7)(B), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One,** the defendant knowingly and willfully represented a number to be the Social Security account number assigned by the Commissioner of Social Security to the defendant; and

**Two,** at the time the Social Security account number was used, it had not been assigned by the Commissioner of Social Security to the defendant; and

2

**Three,** when the defendant made this false representation, he intended to deceive a financial institution; and

**Four**, when the defendant made this false representation, he did so for the purpose of obtaining anything of value.

As to Counts 6 through 9, Defendant admits to knowingly violating Title 18, United States Code, Section 1344, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One,** the defendant knowingly executed a scheme or artifice to obtain the money, funds, or other property owned by or under the control of a financial institution by means of materially false or fraudulent pretenses, representations, or promise; and

**Two,** the defendant did so with the intent to defraud; and

**Three,** the financial institution fit the definition in 18 U.S.C. § 20.

As to Counts 10 through 12, Defendant admits to knowingly violating Title 18, United States Code, Section 287, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, the defendant made to the Internal Revenue Service (IRS) a claim upon the IRS; and

**Two**, the claim was false and fraudulent; and

**Three**, the defendant knew the claim was false and fraudulent; and

**Four**, the false and fraudulent matter was material to the IRS.

As to Counts 13 through 15, Defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

3

**One**, the defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations, or promises; and

**Two**, the defendant acted with the intent to defraud; and

**Three**, in advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

4. <u>**FACTS**</u>**:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

From 2016 through 2019, Defendant owned multiple businesses which generated hundreds of thousands of dollars in gross receipts. However, Defendant under-reported the gross receipts from these businesses to the IRS, reporting gross receipts of only $15,000 for 2016 and $15,950 for 2017. In addition, Defendant claimed dependents K.M. and R.M. on her 2017 tax return filed with the IRS, and dependent R.M. on her 2018 and 2019 tax returns filed with the IRS. However, as Defendant well knew, R.M. and K.M. were not Defendant's dependents. The total amount of IRS loss for these false claims related to tax years 2017, 2018, and 2019, and related relevant conduct, is $29,366.00.

Defendant also used multiple numbers, representing these numbers as her Social Security Number (SSN), with multiple creditors and banks. Records from lenders show that the total losses for charged off accounts opened by Williams using her non-assigned SSN was $28,537.20. In

4

addition to opening loans and lines of credit with numbers that were not her SSN, Defendant also used the non-assigned SSNs to open bank accounts in the names of her businesses. Defendant then deposited checks taken from other peoples' accounts, payable to the order of Defendant or her businesses, without the permission or knowledge of the account owners. Defendant then withdrew the cash from her bank accounts. After the checks were returned as fraudulent or otherwise non-payable, Defendant's accounts were closed with negative balances. The total amount charged off by two separate banks as part of this scheme was $23,850.91.

Defendant admits herein that she knowingly, with the intent to deceive and for the purpose of obtaining anything of value from another person or for any other purposes, did falsely represent a number to be the Social Security number assigned by the Commissioner of Social Security to Defendant, when in fact such number is not the Social Security Number assigned by the Commissioner of Social Security to Defendant, by representing the below listed Social Security Numbers to be Defendant's for the purposes of obtaining loans, lines of credit, or other monies from the below names financial institutions and creditors:

| COUNT | DATE | COMPANY OR CREDITOR | SSN USED |
|---|---|---|---|
| 1 | November 8, 2017 | Heights Financial | ***-**-0471 |
| 2 | September 20, 2017 | Discover | ***-**-0471 |
| 3 | September 13, 2017 | TD Retail Card Services | ***-**-0471 |
| 4 | March 14, 2017 | USAA Savings Bank | ***-**-9292 |
| 5 | September 6, 2017 | Navy Federal Credit Union | ***-**-0471 |

Defendant further admits herein that she knowingly executed a scheme to obtain any of the moneys or funds owned by or under the custody and control of financial institutions by means of materially false or fraudulent pretenses, that she did so with the intent to defraud, and that the financial institutions fit the definition of a financial institution in 18 U.S.C. § 20, depositing checks from legitimate bank accounts, paid to the order of Defendant or Defendant's businesses, without the knowledge or consent of the account owners, and thereafter withdrew the proceeds from these checks in cash from the banks of deposit as listed below:

| Count | Date of Deposit | Bank of Deposit | Victim Account Owner | Amount of Check |
|---|---|---|---|---|
| 6 | 5/2/2019 | Busey Bank | G.G. | $4,500.00 |
| 7 | 5/9/2019 | Busey Bank | E.C. | $5,800.00 |
| 8 | 5/10/2019 | Busey Bank | S.B. | $4,850.33 |
| 9 | 7/3/2019 | First Bank | E.C. | $4,728.00 |

Defendant further admits herein that she made and presented a claim to and upon the Internal Revenue Service, that is, the below listed individuals were her dependents, knowing that the claims were false and fraudulent in that these individuals were not her dependents:

| COUNT | TAX YEAR | DATE OF TAX RETURN RECEIPT BY IRS | DEPENDANT(S) (STATED RELATIONSHIP) |
|---|---|---|---|
| 10 | 2019 | 1/14/2020 | R.M. (Nephew) |
| 11 | 2018 | 2/5/2019 | R.M. (Nephew) |
| 12 | 2017 | 2/4/2018 | R.M. (Nephew) and K.M. (Niece) |

Defendant further admits herein that she devised and intended to devise a scheme to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purposes of executing said scheme and in attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| COUNT | TAX YEAR | DATE OF TAX RETURN SUBMISSION | DEPENDANT(S) (STATED RELATIONSHIP) |
|---|---|---|---|
| 13 | 2019 | 1/14/2020 | R.M. (Nephew) |
| 14 | 2018 | 2/5/2019 | R.M. (Nephew) |
| 15 | 2017 | 2/4/2018 | R.M. (Nephew) and K.M. (Niece) |

**Relevant Conduct**

**1.  CARES Act Fraud:**

**a. PPP & EIDL Fraud:** Under the provisions of The CARES Act, $2.2 trillion dollars in economic stimulus was passed by the 116th U.S. Congress and signed into law by the President in March 2020 in response to the economic decline caused by the COVID-19 pandemic in the United States. The provisions of The CARES Act, in conjunction with an officially declared major disaster by the United States Government under Section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, allowed for the Small Business Administration (SBA) to offer Economic Injury Disaster Loan (EIDL) funding to business owners negatively affected by the COVID-19 pandemic.  Using the SBA online portal, EIDL applicants submitted personal and business information in support of each EIDL application, and they did not have to submit supporting documentation of any sort.

7

The CARES Act also created the Paycheck Protection Program (PPP), intended to provide small businesses with funds to pay up to 8 weeks of payroll costs, including benefits. Similar to the EIDL program, the PPP was also implemented by the SBA with support from the Department of the Treasury.

From in or about April 2020, until in or about May 2021, Defendant submitted or caused to be submitted nine separate EIDL applications for businesses in Defendant's name or otherwise associated with Defendant, and four separate PPP applications for businesses in Defendant's name. The applications submitted or caused to be submitted by the Defendant contained false information regarding the businesses' income and payroll, as well as false information about Defendant's personal criminal history. Moreover, records show that the funds paid by the SBA or United States Treasury to Defendant as a result of these applications were not spent as intended, but rather they were used to fund Defendant's personal lifestyle.

In total, Defendant was paid $144,400.00 in EIDL loan and grant funds for two of the applications, and $52,647 in PPP loan funds for two of the applications.

      b. **California Rent Relief Fraud**: On or about June 23, 2021, Defendant entered into a lease contract to lease a residential apartment at 700 West 9th Street, in Los Angeles, California. The lease term was for June 22, 2021, through June 22, 2022. The monthly rent for the leased premises was $3,803.61.   This lease agreement coincided with Defendant's residency in California for the filming of a television show in which Defendant was a cast member, and for which Defendant was paid a salary. As part of Defendant's contract with the show, the television network also reimbursed Defendant $4,000.00 per month for her California apartment rental in addition to Defendant's salary. In July 2021, Defendant stopped paying the rent on her California

apartment. On January 3, 2022, Defendant applied for the California COVID-19 Rent Relief program, which provided funding for California residents who had experienced financial hardship during the COVID-19 pandemic and had otherwise been affected by COVID-19. Defendant stated her total annual household income was $50,000.00, and Defendant cited "Reduction in hours of work" due to the pandemic in applying for these rent relief funds. On the application, Defendant attested that the information provided in the application was true and correct to the best of her knowledge.

However, the statements in Defendant's application were not true. Defendant had rented an apartment in California for the purpose of filming a television show, but she was not a California resident, as she maintained Missouri residency throughout the time of filming the show. Moreover, Defendant leased an apartment in California based solely on her filming the show, for which Defendant was being paid a salary and having her rent reimbursed, and there was no reduction in work hours or pay on the show due to the COVID-19 pandemic.

On or about July 1, 2022, the California COVID-19 Rent Relief Program, which was funded with federal money pursuant to the CARES Act, issued Defendant a check in the amount of $27,801.96. Defendant deposited the check into her First Community Credit Union account, at a credit union branch located in the Eastern District of Missouri, on or about September 19, 2022.

**2. Insurance Fraud:** Beginning in or about December 2020, and continuing until in or about December 2021, Defendant took part in a conspiracy to defraud at least one insurance company by submitting false and fraudulent medical bills allegedly incurred as a result of vehicle accidents. However, the medical provider listed on the fraudulent bills has confirmed that the bills that Defendant submitted to the insurance company are indeed fraudulent. In addition, the medical

9

provider listed on the fraudulent bills confirmed that Defendant and at least one of her co-conspirators called the medical provider to obtain old copies of medical bills from the provider before Defendant and her co-conspirators began submitting these fraudulent medical bills to the insurance company. The insurance company deposited several payments into accounts owned by Defendant, and the insurance company has sent multiple payments by check made payable to Defendant and/or co-conspirators.

On at least one occasion, Defendant emailed a copy of one of these fraudulent bills to the insurance company, alleging having already paid the fraudulent bill. The fraudulent bill contained the name of a doctor, who previously treated Defendant, but who was not a doctor practicing in Missouri on the date alleged on the fraudulent bill.

In total, the insurance company paid a total of $139,479.92 to Defendant and/or her co-conspirators as a result of this scheme.

**3. Tax Evasion:** Since Defendant has been indicted in this matter, Defendant has not filed annual tax returns as required by the IRS. Moreover, On or about June 24, 2022, Defendant completed a Form W-4 for her current employer, for employment in the Eastern District of Missouri. Despite signing an employment contract for a salary of $90,000 each year, Defendant wrote that she was "exempt" from paying taxes on her W-4, so that no income taxes would be withheld from her paychecks.

The total known intended loss from Defendant's indicted and relevant conduct, as outlined in this Section, is $446,082.99 (plus IRS relevant conduct/tax evasion loss).

10

5. **STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty in Counts 1 through 5 is imprisonment of not more than 5 years, a fine of not more than $250,000 or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

The defendant further understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty in Counts 6 through 9 is imprisonment of not more than 30 years, a fine of not more than $1,000,000 or both such imprisonment and fine.  The Court may also impose a period of supervised release of not more than 5 years.

The defendant further understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty in Counts 10 through 12 is imprisonment of not more than 5 years, a fine of not more than $250,000 or both such imprisonment and fine.  The Court may also impose a period of supervised release of not more than 3 years.

The defendant further understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty in Counts 13 through 15 is imprisonment of not more than 20 years, a fine of not more than $1,000,000 or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

6. **U.S. SENTENCING GUIDELINES:  2021 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.   The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

11

    a. **Chapter 2 Offense Conduct:**

    **(1) Base Offense Level:**  The guideline for Counts 1 through 5 and Counts 10 through 12 is found under USSG §2B1.1. The parties agree that the base offense level is **6** as found in Section 2B1.1(a)(2).

    The guideline for Counts 6 through 9 and Counts 13 through 15 is found under USSG §2B1.1. The parties agree that the base offense level is **7** as found in Section 2B1.1(a)(1).

    The parties further agree that pursuant to USSG §3D1.2(d), the guidelines for Counts 1 through 15 should be grouped together.

    **(2) Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristics apply: **12** levels should be added pursuant to Section 2B1.1(b)(1)(G), because the actual and intended loss amount for the charged offenses and relevant conduct was greater than $550,000 but less than $1,500,000; **2** levels should be added pursuant to Section 2B1.1(b)(10)(C), because the charged offenses and relevant conduct involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means; and **2** levels should be added pursuant to Section 2B1.1(b)(12), because relevant conduct involved conduct described in 18 U.S.C. § 1040 (fraud in connection with major disaster or emergency benefits).

    b. **Chapter 3 Adjustments:**

    **(1) Acceptance of Responsibility:** The parties agree that **3** levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon

information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

        **(2)** **Other Adjustments**:  The parties agree that the following additional adjustments apply: **None.**

    c.  **Estimated Total Offense Level**:  The parties estimate that the Total Offense Level for Counts 1 through 15 is **20.**

    d.  **Criminal History**:  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

    e.  **Effect of Parties' U.S. Sentencing Guidelines Analysis**:  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7.  WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**:

13

    a. **Appeal:**  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

    **(1) Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

    **(2) Sentencing Issues:**  In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

    b. **Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    c. **Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought

under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER:**

    a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.  These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished

    d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $1,500.00 which the defendant agrees to pay at the time of sentencing.  Money paid by the

15

defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

    e. **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

    f. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss determined by the sentencing court, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

    g. **Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agencies.

16

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities.  Defendant also agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government, the exact amount to be determined by this Court at or before sentencing. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence.  The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners.  The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

9. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance

of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in

this case.  In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea.  The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement.  The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **N O RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

| | |
|---|---|
| 4/13/2023<br>Date | *Diane Klocke*<br>Diane Klocke<br>Special Assistant United States Attorney |
| 04/13/22<br>Date | Brittish Williams<br>Defendant |
| 4/13/2023<br>Date | Beau Brindley<br>Attorney for Defendant |